```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/30/2017
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JENNIFER FELTENSTEIN,

          Plaintiff,

-against-

CITY OF NEW ROCHELLE,

          Defendant.

No. 14-cv-5434 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Jennifer Feltenstein initiated this action against the City of New Rochelle ("Defendant" or "the City"), alleging violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794, New York State Human Rights Law, N.Y. Executive Law § 296, and N.Y. Civil Rights Law § 40. Before the Court is a motion for summary judgment filed by Defendant pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, Defendant's motion is DENIED.

## BACKGROUND

The following facts are derived from the parties' 56.1 statements and the record, and are undisputed unless otherwise noted.

Defendant owns and manages the operations of the New Roc parking structure located at 50 Harrison Street, New Rochelle, New York ("the New Roc garage" or the "Garage"). (Pl. Reply to Def. Rule 56.1 Statement and Additional Paragraphs ("Pl. 56.1 Reply") ¶ 3, ECF No. 44; Def. Reply to Pl. Rule 56.1 Statement ("Def. 56.1 Reply") ¶ 57, ECF No.42.) The New Roc garage, constructed between 1992 and 2010, has seven levels and approximately 2,000 parking spaces. (Def. 56.1 Reply ¶¶ 21, 28.) Defendant is responsible for restriping parking spaces at the Garage,

1

and repaints the spaces every few years. (Def. 56.1 Reply ¶ 58.) Forty-seven of the Garage spaces have been designated by Defendant as accessible for the disabled, all of which are located on the lowest level[1] of the garage. (Pl. 56.1 Reply ¶ 4; Def. 56.1 Reply ¶¶ 28, 29.)

Prior to its construction, city officials held a meeting in August 1998 where the development of the Garage was discussed. (Def. 56.1 Reply ¶ 30.) Four days after this meeting, a city official circulated an "interdepartmental communication" with comments regarding the aforementioned meeting which included the following: "Issue 1 and 19. Are the spaces dispersed and located closest to the accessible entrances for the various occupancies, B2, C1, C2, C5?." (Def. 56 Reply ¶¶ 31-33; *see also* Declaration of Plaintiff's Counsel Glenn Parker ("Parker Decl."), Ex. 4, Batestamp CITY 00001, ECF No. 36.)

Plaintiff, who resides in New Rochelle, New York, uses a wheelchair due to a medical condition. (Pl. 56.1 Reply ¶¶ 1, 5.) Plaintiff has been to the New Roc Garage multiple times. (Def. 56.1 Reply ¶ 43.) She utilizes the Garage in order to go to the Regal movie theater located on LeCount Place, New Rochelle. (Pl. 56.1 Reply ¶ 6.) In fact, Plaintiff has utilized and parked at the Garage to go to the movie theater more than twenty times. (Def. 56.1 Reply ¶ 44.) When Plaintiff utilizes the garage, her father drives her in a wheel chair van with a ramp. (Pl. 56.1 Reply ¶ 8.) Plaintiff gets into and out of the van via this internal ramp. (Def 56.1 Reply ¶ 50.) When they arrive at the garage, before parking the van, Plaintiff's father drops her and her mother on the first floor, in an area leading directly to the Regal movie theater. (Pl. 56.1 Reply ¶ 9.) After being dropped off, Plaintiff can often travel to the entrance of the Regal theater without encountering any obstructions, such as doors or lack of curb cuts. (Def 56.1 Reply ¶ 52.) Plaintiff has never

---

[1] The parties dispute whether this is in fact a "basement" level, but appear to agree that this is the lowest level of the garage. (*See* Def. 56.1 Reply ¶ 23.) Defendant contends that this is not appropriately characterized as a "basement" because it can be accessed from a natural adjacent grade. (*Id*.)

been in the van with her father when he has parked on the lower level of the Garage where the handicap accessible spaces are located. (Pl. 56.1 Reply ¶ 11.)

Plaintiff also frequents Applebees and Buffalo Wild Wings, which are also located on LeCount Place, in the vicinity of the theater, but does not utilize the garage when she does so. (*Id*. ¶ 7; Def 56.1 Reply ¶ 35.) Instead, when she visits these restaurants her father drops her off directly in front of their entrances. (Pl. 56.1 Reply ¶ 7.) Plaintiff has also stayed in and visited her grandmother at the Marriott Hotel when her grandmother visits roughly once a year. (Def 56.1 Reply ¶ 54.)

Inside the Garage, the pedestrian entrance to LeCount Place is located on the first floor level. (Def. 56.1 Reply ¶¶ 36, 37.) There are no accessible parking spaces on the first level of the Garage. (*Id*. ¶ 39.) The lower level, where the accessible spaces are, is located one level below LeCount Place, the street where the Regal theater, Buffalo Wild Wings, and Applebees are located. (*Id*. ¶ 38.) Thus to access these establishments, one who utilizes the accessible spaces on the lower level may take an elevator to the first level and access LeCount Place through a pedestrian entrance on that level of the Garage. (*Id.* ¶¶ 39, 40.)

Plaintiff has testified that she desires a handicap accessible parking space on the first level so that she and her family can safely enter and exit their van together at the same location, where the van can also be parked. (Def. 56.1 Reply ¶ 55.) Plaintiff has also testified that she intends to return to the Garage when she goes to the Regal theater, Applebees, and/or Buffalo Wild Wings, and while visiting her grandmother at the Marriott Hotel. (*Id*. ¶ 56.)

On September 18, 2015, Defendant represented to the Court that it had made the decision to create accessible parking spaces on the first level of the Garage; however, this work was not completed within the timeframe initially contemplated by Defendant. (Def. 56.1 Reply ¶¶ 66-68.)

On December 17, 2015, the City requested a 60 day extension to file its motion in order to complete the bidding process and undertake work on the Garage. (ECF No. 27.) Although Defendant received an extension, at the end of that time period, a bid had not yet been accepted. (Def. 56.1 Reply ¶ 70.) Defendant contends that the project was expected to be completed by June 22, 2016. (*Id.* ¶ 71.)

## STANDARD ON A SUMMARY JUDGMENT

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. The rule states in pertinent part:

> A party may move for summary judgment, identifying each claim or defense— or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine dispute or issue of material fact by pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has fulfilled its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)). In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. Rather, "the inquiry performed is the threshold

inquiry of determining whether there is the need for a trial." *Id.* at 250.

**DISCUSSION**

As noted by the Second Circuit, "the ADA was enacted to 'provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (citing 42 U.S.C. § 12101(b)(1)). As to Plaintiff's ADA claim, she brings suit under Title II, which concerns access to public services and provides as follows: "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Plaintiff also brings suit under Section 504 of the Rehabilitation Act, which provides that: "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Claims under the two statutes are generally treated as identical. *Henrietta*, 331 F.3d at 272; *Rodriguez*, 197 F.3d at 618 ("Because Section 504 of the Rehabilitation Act and the ADA impose identical requirements, we consider these claims in tandem."); *Eskenazi-McGibney v. Connetquot Cent. Sch. Dist.*, 84 F. Supp. 3d 221, 231 (E.D.N.Y. 2015) ("Claims under Title II of the ADA and Section 504 of the Rehabilitation Act are analyzed identically."). Plaintiff's state claims for disability discrimination are governed by the same legal standards as ADA claims, and are thus treated identically here as well. *Shariff v. Beach 90th St. Realty Corp.*, 11-CV-2551 (ENV) (LB), 2013 WL 6835157, at *5 (E.D.N.Y. Dec. 20, 2013); *see Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006) ("A claim of disability discrimination under New York State Human

Rights Law is governed by the same legal standards as govern federal ADA claims.") (internal citations omitted); *Panzica v. Mas-Maz, Inc.*, 05-CV-2595 (ARL), 2007 WL 1732123, at *5 n.1 (E.D.N.Y. June 11, 2007) (noting claims arising under NYSHRL and New York Civil Rights Law "are governed by the same legal standards as federal ADA claims.")[2]

   I.   Standing

To establish standing a plaintiff must prove: "(1) injury in fact, which must be (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) that the injury is likely to be redressed by a favorable decision." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013) (citing *See Field Day, LLC v. County of Suffolk,* 463 F.3d 167, 175 (2d Cir. 2006)). When, as here, a plaintiff seeks injunctive relief, she must also prove that the identified injury presents a "real and immediate threat of repeated injury." *Id*. (citing *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004)). In the ADA context, the Second Circuit has "previously found standing (and therefore an injury in fact) where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [facility] to plaintiff's home, that plaintiff intended to return to the subject location." *Kreisler*, 731 F.3d at 187–88 (citing *Camarillo v. Carrols Corp.,* 518 F.3d 153, 158 (2d Cir.2008)).

Defendant argues that Plaintiff lacks standing to bring suit because she has not personally suffered an injury in fact. (*See* Def. Mem. in Support of Mot. for Summary Judgment ("Def. Mem.") at 5, ECF No. 33.) Specifically, Defendant argues that Plaintiff has never been in the van when her father has parked on the lower level of the Garage, and encounters no barrier when her

---

[2] The parties refer to Plaintiff's collective claims as "ADA" claims (*see, e.g*., Pl. Opp. to Def. Mot. for Summary Judgment ("Pl. Opp."), at 2, ECF No. 38), and the Court does the same.

father drops her off on the first floor of the Garage, where she travels directly out to the mall and theater. (*Id*. at 5-6.) Defendant further contends that the evidence establishes that Plaintiff has not encountered any of the violations alleged her in complaint. (*Id*.) In response, Plaintiff argues that she is injured by Defendant's violation of the ADA, due to its failure to provide handicap accessible parking spaces on the first floor. (Pl. Opp. at 2.) Plaintiff also asserts that Defendant's grouping of all of the handicap accessible spots on the lower level violates the ADA and is discriminatory. (*Id*.)

The Court looks to the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG"), to determine whether the alleged deficiencies in the New Roc Garage constitute discrimination under the ADA. *Shariff,* 2013 WL 6835157, at *4 (collecting cases where ADAAG consulted to determine compliance with ADA). Here, the parties' dispute arises out of the following ADAAG provisions: 28 C.F.R. Pt. 36, App. A §§ 4.1.2(5) and 4.6.2.

28 C.F.R. § 4.1.2(5)(b) provides:

> One in every eight accessible spaces, but not less than one … shall be designated "van accessible" as required by 4.6.4 … All such spaces may be grouped on one level of a parking structure.[3]

28 C.F.R. § 4.6.2 provides:

> Accessible parking spaces serving a particular building shall be located on the shortest accessible route of travel from adjacent parking to an accessible entrance. In parking facilities that do not serve a particular building, accessible parking shall be located on the shortest accessible route of travel to an accessible pedestrian entrance of the parking facility. In buildings with multiple accessible entrances with

---

[3] The proceeding section includes a table reflecting the ratio of minimum required accessible spaces to total spaces in a parking lot. The regulation generally requires that one out of every twenty-five parking spaces be accessible. 28 C.F.R. § 4.1.2(5)(a). New Roc Garage has over 2000 spaces (*see* Def. 56.1 Reply ¶ 28.) Thus, according to the table, which requires that lots with over 1001 spaces have 20 accessible spaces, plus one for each 100 over 1000, the New Roc Garage must have at least 30 accessible parking spaces. *See* 28 C.F.R. § 4.1.2(5)(a). As indicated in the excerpted portion of section 4.1.2(5), a small subset – one in every eight – must be "van accessible" as described by the ADAAG. The New Roc Garage has 47 spaces, all of which, according to Defendant, are van accessible. (*See* Def. 56.1 Reply ¶ 28.)

7

adjacent parking, accessible parking spaces shall be dispersed and located closest to the accessible entrances.[4]

Plaintiff argues that Defendant is not in compliance with § 4.6.2 and, is thus in violation of the ADA. (*See* Pl. Opp. at 3-5.) Defendant appears to concede that § 4.6.2 requires parking spaces be dispersed throughout a parking facility, but argues that it is "exempt" from complying with this provision because all of its spaces are "van accessible" and can thus be grouped on the lower level of the parking structure pursuant to the last sentence of section 4.1.2(5)(b), which permits van accessible spaces to be grouped on one level of a parking structure. Therefore, the Court must decide whether section 4.1.2(5)(b) overrides section 4.6.2.

In *Kornblau v. Dade Cty.*, 86 F.3d 193 (11th Cir. 1996), the Eleventh Circuit reviewed both sections 4.1.2(5) and 4.6.2 to determine whether the defendant was in compliance with the ADA. In its review, the Circuit Court noted that "[t]he starting point in statutory construction must be the language of the statute itself," that a "statute should be construed so that effect is given to all its provisions, so that no part of it will be inoperative or superfluous, void or insignificant" and that it was therefore "a court's duty to give effect, if possible, to every clause and word of a statute." *Kornblau*, 86 F.3d at 195 (internal citations omitted). In light of this principle, the court analyzed these sections in conjunction with one another. *Id*.

Applying the same principle here, the Court cannot adopt Defendant's interpretation of the provisions, which creates an unreasonable conflict between sections 4.1.2(5) and 4.6.2. To reiterate, Defendant argues that, because all of its spaces are "van accessible," it is exempt from,

---

[4] Defendant contends that New Roc is a parking facility that serves multiple buildings, rather than a single, particular one. (*See* Def. Mem. at 2.) The parties appear to agree that as a parking facility servicing buildings with multiple accessible entrances, the accessible parking spaces must be dispersed, and located "closest to the accessible entrances." 28 C.F.R. § 4.1.2(5)(b).

8

and need not comply with Section 4.6.2.[5] Defendant does not point to any language within the ADAAG, or any case law that stands for this proposition, nor is the Court aware of any. Instead, reading the plain language of the provisions together, so as to give effect to both, the Court finds as follows: Section 4.1.2(5)(b) mandates that one in eight accessible spaces be "van accessible" and – contemplating that this might reasonably form a subset of accessible spaces, as that is all that the section requires – *permits* "all such spaces" to be grouped on one level of the structure. 28 C.F.R. § 4.1.2(5)(b) ("All such spaces *may be grouped* on one level of a parking structure") (emphasis added); U.S. Dept. of Justice, *ADA Business Brief*, 2 (2001), http://www2.ci.lancaster.oh.us/dept/certifiedbuilding/pdf/ADA/ADA%20Parking.pdf; ("*Van-accessible parking spaces* located in parking garages *may be clustered* on one floor (*to accommodate the 98-inch minimum vertical height requirement*)") (emphasis added); U.S. Dept. of Justice, *ADA Compliance Brief*, 2 (2015), https://www.ada.gov/restriping_parking/restriping2015.pdf (same); *see also* U.S. Dept. of Justice - U.S. Small Business Administration, *ADA Guide for Small Businesses*, 5 (1999), https://www.ada.gov/smbusgd.pdf ("Where parking is provided in several locations near building entrances, the accessible parking *should also be dispersed*, if doing so is readily achievable. *Since van accessible parking spaces are provided in limited numbers, it is often not possible to disperse the van accessible parking spaces*.") (emphasis added). However, a facility "may" group all such spaces together only to the extent that it can do so without violating the other sections of the ADAAG.

Section 4.6.2 requires that parking facilities servicing buildings with multiple accessible

---

[5] Defendant effectively concedes that, if not for its interpretation of 4.1.2(5)(b) as creating an exemption, it would in fact be required to disperse accessible parking spaces throughout of the Garage. (*See* Def. Reply at 1 ("van accessible spaces are exempted from being dispersed on all levels."); Def. Mem. at 8.)

entrances disperse accessible parking spaces. ADAAG 4.6.2; (*see* Def. Reply at 1 (dispersion required if not for § 4.1.2); Pl. Opp. at 3 (dispersion required).) Where parking facilities are multi-level, this appears to be generally understood as requiring dispersion of spaces among those levels. *See Perdum v. Forest City Ratner Companies*, 16-CV-1240, 2017 WL 537056, at *1 (2d Cir. Feb. 8, 2017) (citing to appellant's brief reflecting that handicapped parking spaces are located nearest to the elevators *on each floor of garage*, and finding, as such, that appellee had not been denied access to handicap parking) (emphasis added); *Perdum v. Forest City Ratner Companies*, 174 F. Supp. 3d 706, 711 (E.D.N.Y. 2016), *aff'd*, 16-CV-1240, 2017 WL 537056 (2d Cir. Feb. 8, 2017) (noting handicap parking spaces are dispersed on first and second level in two-level garage); *Gaylor v. Greenbriar of Dahlonega Shopping Ctr., Inc.*, 975 F. Supp. 2d 1374, 1392 (N.D. Ga. 2013) (noting plaintiff's expert found conditions violated 1991 Standards § 4.6.2 but that expert indicated that violation could be corrected by modifying the existing parking facility to *evenly distribute accessible parking spaces*); *see also Ass'n for Disabled Americans, Inc. v. Key Largo Bay Beach, LLC*, 407 F. Supp. 2d 1321, 1345–46 (S.D. Fla. 2005) (no ADA violation where accessible parking spaces dispersed throughout different areas of facility). Without authority indicating a facility can exempt itself from and effectively evade the requirements imposed by Section 4.6.2 by making all of their spots van accessible, the Court cannot read tension into the statute when a harmonious reading of the plain language is available.

Turning to whether this ADA violation causes injury to Plaintiff, "under the ADA, when a disabled person encounters an accessibility barrier violating its provisions, it is not necessary for standing purposes that the barrier completely preclude the plaintiff from entering or from using a facility in any way. Rather, the barrier need only interfere with the plaintiff's 'full and equal enjoyment' of the facility …". *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 947 (9th Cir.

2011) (citing 42 U.S.C. § 12182(a)). The ADAAG establishes the technical standards required for "full and equal enjoyment." *Chapman*, 631 F.3d at 947. If a barrier violating these standards relates to a plaintiff's particular disability, it is understood to impair the plaintiff's full and equal access, which constitutes discrimination under the ADA. *Id*. That discrimination is considered to satisfy the "injury-in-fact" element challenged by Defendant here. *Id*. ("Once a disabled individual has encountered or become aware of alleged ADA violations that … interfere with his access to a place of public accommodation, he has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts, and so he possesses standing under Article III … A disabled person who encounters a 'barrier,' *i.e.,* an architectural feature that fails to comply with an ADAAG standard relating to his disability, suffers unlawful discrimination as defined by the ADA … encounters with the noncompliant barriers related to one's disability are sufficient to demonstrate an injury-in-fact for standing purposes"); *Access 4 All, Inc. v. G & T Consulting Co., LLC*, 06-CV-13736 (DF), 2008 WL 851918, at *4 (S.D.N.Y. Mar. 28, 2008) ("Courts have also found that, even where the physical or other barriers in question have not entirely prevented disabled plaintiffs from visiting or receiving services offered at a public accommodation, such that the plaintiffs can continue to visit the facility even with those barriers in place, the plaintiffs still have standing to sue under the ADA, when the barriers render their use of the facility more difficult, burdensome, or dangerous than it would be for individuals who are not disabled.").

There is no dispute that Defendant has not complied with Section 4.6.2 of the ADAAG. (*See* Def. Reply at 1.) Furthermore, as previously stated, the Court will not read tension into the ADAAG by accepting Defendants' unsupported interpretation of the guidelines as excusing it from complying with Section 4.6.2. Defendant's lack of compliance with Section 4.6.2 of the ADAAG

is directly relevant to Plaintiff's disability. The Court also notes that Plaintiff testified at her deposition that because there are no handicap accessible spaces on the first level of the Garage, her father, who drives a wheelchair van, drops her and her mother off and picks them up on the first level before parking their vehicle elsewhere, and that she sometimes has to pass through vehicular traffic to get from the van to the theater; the Court also notes that she offers a declaration by her father attesting that, to let Plaintiff out on the first level, he must find a large vehicle free area to operate the internal ramp, presumably such that she can exit the vehicle safely. (*See* Decl. of Peter Meisels in Support of Summary Judgment, Ex. C, 6-10, ECF No. 31; Def. 56.1 Reply ¶ 51.) Because Plaintiff has encountered non-compliant barriers relating to her disability she has experienced discrimination under the ADA sufficient to satisfy the "injury-in-fact" required to confer standing. As such, the Court declines to grant Defendant summary judgment as to standing based on the record this juncture.

II. Mootness of Plaintiff's Claims

Defendant also asserts that Plaintiff's claims are moot because Defendant has voluntarily elected to place additional accessible parking spaces on the first floor of the Garage. (Def. Mem. at 8.)[6] In further support of this argument, Defendant argues that this Court should deem Plaintiff's claims moot because the alleged violations are not likely to recur. (Def. Reply at 6-9.)

A request for injunctive relief will only be deemed moot by a defendant's voluntary compliance if the defendant meets the "formidable burden" of demonstrating that it is "absolutely clear the alleged wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). The natural assumption is thus that the facility is ADA-compliant and the violations have ceased for at least the moment,

---

[6] Defendant's mootness argument with regard to its compliance with the ADA has been addressed above.

whether or not they may recur. Defendant's arguments presuppose this necessary premise – that the modifications made by Defendant have in fact remedied the alleged ADA violations identified by Plaintiff.[7]

Defendant was still in the process of modifying the Garage when it submitted its moving papers. (*See, e.g.*, Def. Mem. at 11; Def. Reply at 9.) After all summary judgment papers had been submitted, Defendant submitted a two-page affidavit of Paul Vacca, Deputy Commissioner of Development and Building Official for New Rochelle's Building Department, attesting that the Garage has been updated in accordance with the ADA, for consideration in conjunction with its motion for summary judgment. (*See* ECF No. 45.) Defendant also requested thirty-days to submit an expert affidavit detailing the work performed at the Garage, but did not do so, nor did it correspond further with the Court regarding these supplemental papers. (*See id.*) Plaintiff questioned the validity of the affidavit, noting that the affiant did not claim to have personal

---

[7] Notably, the cases Defendant cites or attempts to distinguish in support of this argument (*see* Def.'s Reply at 6-9), recognize that a claim for prospective injunctive relief can only be deemed moot when it is clear that the defendant's alleged violations have been remedied and there is no longer a live controversy as to defendant's compliance with the ADA. *See, e.g.*, *Lozano v. C.A. Martinez Family Ltd. P'ship*, 129 F. Supp. 3d 967, 970 (S.D. Cal. 2015) (noting importance of plaintiff's concession that defendant's modifications had made parking spaces "perfect" in action where defendant argued claims mooted by voluntary compliance); *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 850, 861 (N.D. Cal. 2011) (noting defendant's argument that claims moot were premised upon plaintiff's concession that the facility was compliant, but rejecting mootness argument nonetheless, where it was unclear whether defendant was in fact ADA compliant); *Sharp v. Rosa Mexicano, D.C., LLC*, 496 F. Supp. 2d 93, 95 (D.D.C. 2007) (finding plaintiff's ADA claim moot where undisputed record evidence demonstrated that defendant's facility was in fact ADA compliant); *accord Rogers v. China One Express Corp.*, 16-CV-81557, 2016 WL 7324078, at *3 (S.D. Fla. Dec. 15, 2016) ("the mere promise to remedy an ongoing violation is [not] enough to prove mootness"); *Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 202 (S.D.N.Y. 2016) (noting courts have rejected mootness challenges where "claimed ADA-corrective changes alleged … consisted largely of promises that … [would] [be] fulfill[ed] in the future [such that] it [could not] be contended that defendants ha[d] completely and irrevocably eradicated the effects of the alleged ADA violations") (internal quotation marks and citations omitted); *see also Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1184, 1187 (11th Cir. 2007) ("A case *might* become moot if subsequent events made it *absolutely clear* that the allegedly wrongful behavior *could not reasonably be expected to recur* ... [however] a defendant's failure to acknowledge wrongdoing similarly suggests that cessation is motivated merely by a desire to avoid liability, and furthermore ensures that a live dispute between the parties remains.") (emphasis added).

knowledge of the work performed, and that the affidavit makes legal conclusions of compliance with the ADA without providing sufficient factual detail. (*See* ECF Nos. 47, 48.) The Court agrees with Plaintiff that the Vacca Affidavit fails to provide detail sufficient to discern whether or not the changes made to the Garage bring the facility into compliance with the ADA. As such, Defendant has not shown, through this summary judgment process, that modifications made to the Garage have mooted Plaintiff's claims.

    III.    Compensatory Damages Under the ADA and Rehabilitation Act[8]

To recover compensatory damages under the ADA or the Rehabilitation Act, a plaintiff must prove that the defendant exhibited "deliberate indifference" as to the "strong likelihood" that its actions were unlawful under the statutes. *Loeffler*, 582 F.3d at 275. In this context, a plaintiff demonstrates deliberate indifference by pointing to evidence the "official with authority to address the alleged discrimination and to institute corrective measures on Plaintiff's behalf had actual knowledge of ongoing discrimination against Plaintiff but failed to respond adequately." *Gershanow v. Cty. of Rockland*, 11-CV-8174 (CS), 2014 WL 1099821, at *4 (S.D.N.Y. Mar. 20, 2014) (citing *Stamm v. N.Y.C. Transit Auth.,* 04–CV–2163, 2013 WL 244793, at * 4 (E.D.N.Y. Jan. 22, 2013). A defendant's actions must demonstrate "deliberate choice ... rather than negligence or bureaucratic inaction." *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007).

To avoid summary judgment, Plaintiff must submit evidence sufficient to create a genuine dispute of fact as to whether Defendant was "deliberately indifferent" toward its obligation to accommodate Plaintiff under the law to the extent that it had actual knowledge of the discrimination against Plaintiff that it failed to adequately address. The crux of Plaintiff's argument that Defendant acted with deliberate indifference is that Defendant made a "deliberate

---

[8] Plaintiff withdraws her claim for punitive damages. (*See* Pl. Opp. at 23.)

choice" to locate all of the accessible parking spaces on the lower level of the Garage, amounting to indifference despite knowledge of their legal obligations. (*See* Pl. Opp. at 24.)

The evidentiary record includes a summary of a meeting held by City Officials in 1998 before the construction of the New Roc Garage occurred. (*See* Parker Decl. Ex. 4.) The summary reflects a discussion about the number and placement of handicap accessible parking spaces to be included at the facility. (*Id.*) Specifically, this document indicates that thirty spaces were believed to be required, and that they would all be grouped on one level. Four days after this meeting, City official Louis Goodman sent an interdepartmental memo with just two entries, one of which questioned whether the handicap spaces were "dispersed and located closest to the accessible occupancies, B2, C1, C2, C5". (*Id.*) Plaintiff contends that this demonstrates that Goodman had "question[ed] the legality of the placement and grouping of the handicap parking spaces" and that Defendant was thus on notice that grouping all spaces on one level violated the ADA. (*See* Def 56.1 Reply ¶ 32.) Defendant disagrees with this characterization and argues that city officials were unaware of any potential violations. (*See* Def. Reply at 10.) In furtherance of this argument, Defendant cites the deposition testimony of Paul Vacca, who has held the position as Deputy Commissioner and manager of the New Roc Garage for the past eight years, indicating he believed the Garage to be in compliance with the ADA, but that if he became aware of any possible deficiencies, he would make "every attempt" to correct them. (*See* Def. Mem. at 10.) Though perhaps close, based upon this evidence, the Court cannot conclude that no rational trier of fact could infer that Defendant acted with deliberate indifference to the strong likelihood that a violation of federally protected would result. *See Melendez v. Monroe Coll.*, 04-CV-2266 (NGG) (LB), 2006 WL 2882568, at *8 (E.D.N.Y. Oct. 6, 2006). The Court thus finds there to be a material dispute of fact as to whether Defendant was aware that the Garage violated the ADA but failed to

15

respond adequately, such that it could be found to have acted with "deliberate indifference" under the body of case law in question. As such, the Court declines to grant Defendant summary judgment on this basis.

IV. Defendant's Request for a Stay

As part of its motion for summary judgment, Defendant requested that the Court stay this matter until the work to be performed on the Garage was expected to be completed. (*See* Def. Mem. at 11.) Since the motion papers were filed, the Court has received correspondence from Defendant indicating work on the Garage has been completed. (ECF No. 45.) As such, the request for a stay on this ground is now moot. The Court directs Defendant to submit appropriate documentation of the work completed on the Garage to the Court and Plaintiff within thirty days of this decision.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is DENIED. Defendant is directed to provide appropriate documentation to opposing counsel and the Court concerning the details of the work performed on the Garage to bring it within ADA compliance within thirty days of this decision. The parties are directed to appear for a Status Conference on July 28, 2017 at 11 a.m. at the United States Courthouse, 300 Quarropas Street, Courtroom 218, White Plains, New York 10601, and should be prepared to discuss whether any claim for injunctive relief remains in light of the documentation submitted, and how it affects the posture of the case. The Court respectfully directs the Clerk to terminate the motions at ECF Nos. 30 and 45.

Dated: May 30, 2017                                  SO ORDERED:
White Plains, New York

                                                           NELSON S. ROMAN
                                                           United States District Judge