UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/8/2018

JENNIFER FELTENSTEIN,

                Plaintiff,

  -against-

CITY OF NEW ROCHELLE,

                Defendant.

No. 14-cv-5434 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Jennifer Feltenstein initiated this action against the City of New Rochelle ("Defendant" or "the City"), alleging violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794, New York Executive Law § 296, and New York Civil Rights Law § 40. (*See* Complaint ("Compl.") ¶ 1, ECF No. 1.) Before the Court is Defendant's motion to compel production of Plaintiff's medical records and Plaintiff's motion for discovery sanctions. For the following reasons, Defendant's motion to compel production of Plaintiff's medical records is DENIED at this time. Plaintiff's motion for discovery abuse sanctions is DENIED in part and GRANTED in part. The Court re-opens discovery from the date of this Opinion until October 28, 2018.

## I.    **BACKGROUND**

The Court assumes familiarity with the facts of this case. *See Feltenstein v. City of New Rochelle*, 254 F. Supp. 3d 647 (S.D.N.Y. 2017). A few facts, however, bear recitation.

This case arises from Defendant's purported non-compliance with, *inter alia*, the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 ("RA"). Defendant owns and manages the operations of the New Roc parking garage structure located at 50

1

Harrison Street, New Rochelle, New York ("the New Roc garage" or the "Garage"). (*See* Complaint ("Compl.") ¶¶ 7–8, ECF No. 1.)   The garage, constructed sometime after 1992, is a multi-story parking garage. (*See id.* ¶¶ 1, 8, 20.) The Complaint alleges that the Garage is in violation of multiple federal and state laws including the ADA and the RA. Specifically, Plaintiff alleges that Defendant's facility is not fully accessible and fails to provide an integrated and equal setting for the disabled. (*Id.* ¶ 25.) At the commencement of this action, all the designated accessible parking spaces were located in the basement floor of the parking garage. (*Id.* ¶ 26(I).)

Plaintiff and her family often go to the movies and other establishments near the New Roc Garage. (*Id.* ¶ 9.) (*Id.* ¶¶ 5, 15.) When visiting those establishments, Plaintiff and her family park in the Garage. Due to several medical conditions that limit Plaintiff's physical movements, she is confined to a wheelchair. Given Plaintiff's conditions, she and her family were required to park in the basement of the New Roc Garage. (*Id.* ¶ 10.) Plaintiff alleges that as a result of parking in the basement, Plaintiff and her family have been humiliated and deterred from utilizing the Garage. (*Id.* ¶¶ 11–12.) Plaintiff also alleges that as a result of the City's conduct, she suffered emotional distress including "humiliation, embarrassment, stress, and anxiety" and seeks damages in the amount of at least $100,000. (*Id.* ¶¶ 60–61.)

During discovery, Defendant requested medical authorizations from Plaintiff for records related to treatment of any injuries alleged in the Complaint. (Def. Mem. of Law Regarding Discovery of Plaintiff's Medical Records ("Def. Medical Mot.") 2, ECF No. 69.) Specifically, the Defendant's requested that Plaintiff:

> Provide HIPAA complaint authorizations to obtain the plaintiff[']s records from any physician and/or health care provider, including but not limited to social workers, psychologists, psychiatrists or counselors, who examined and/or treated the plaintiff for any condition alleged to have occurred as a result of the conduct alleged in the complaint.

(Decl. of Peter A. Meisels ("Meisels Medical Decl."), Ex. 4, Pl. Response to Def. Request for Production of Documents ("Pl. Discovery Response") 2, ECF No. 70.) Plaintiff responded on December 10, 2014 by noting that:

> Plaintiff has not sought medical or mental health treatment for any of the injuries alleged in the Complaint and therefore objects to this request on the grounds that it is unfocused, unduly burdensome, over broad, not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff also objects as this request seeks highly confidential medical information protected from disclosure by various laws.

(*Id.*) Following the close of discovery, this Court scheduled a six-day bench trial for the week of April 23, 2018.

In preparing for trial, Defendant discovered that Plaintiff may have received "treatment for emotional distress." (Def. Medical Mot. 2.) Specifically, Defendant discovered that a federal district judge ordered Plaintiff to produce documents regarding treatment she received for emotional distress in a separate case. Those documents included records from the Blythedale Children's Hospital, where Plaintiff purportedly received treatment for anxiety in August of 2011.[1] (Meisels Medical Decl., Ex. 6 at 2.) Soon thereafter, Defendant's counsel conferred with Plaintiff's counsel regarding their previous request for any medical records related to treatment for emotional distress as a result of the conduct alleged in the Complaint. (Def. Medical Mot. 2–3.) Plaintiff refused to produce the subject medical records, and the Defendant informed this Court of the discovery dispute. (*Id.* at 3.) This Court held a conference regarding the medical records on December 19, 2017.[2]

---

[1] The Court notes that Defendant withdrew "its demand for the records of Dr. Sigurdsson-Stellman." (Def. Medical Mot. 9.) This withdrawal, however, is conditioned on Plaintiff's disclaimer of any damages for severe emotional distress. (*Id.*)

[2] This Court directed the parties to submit memoranda of law regarding the production of medical records, and whether or not the Defendant is entitled to depose Plaintiff, limited to the question of damages.

That conference, however, would not resolve all discovery disputes. Despite communicating to the Court that discovery was complete at the December 19, 2017, conference, Defense counsel made four supplemental Federal Rule of Civil Procedure 26(a) disclosures on December 18, 2017, January 31, 2018, February 8, 2018, and February 16, 2018. On February 27, 2018, Plaintiff filed a pre-motion letter requesting leave to make a motion for discovery abuse sanctions. (ECF No. 73.) The Court granted Plaintiff's request to make a motion and cancelled the trial set for April of 2018. (ECF No. 76.)

The supplemental disclosures included documents and the name of a new potential witness which Defendant wishes to rely upon in their defense of the ADA and RA claims.[3] Specifically, the December 18, 2017 supplemental disclosure included two documents: (1) the Standard Form of Agreement Between Owner and Design/Builder; and (2) the Master Garage Agreement. (Def. Mem. of Law in Opp. to Pl. Mot. for Discovery Sanctions ("Def. Sanctions Opp.") 8, ECF No. 87; *see generally* Decl. of Glen H. Parker in Supp. of Pl. Mot. for Discovery Abuse Sanctions and Fees ("Parker Decl."), Ex. 3, ECF No. 85.) Both of these documents were purportedly made available to the Plaintiff in the Building Department files offered by the City for inspection and copying during discovery in December of 2014. (Def. Sanctions Opp. 8.)

---

[3] Defendant notes that a claim for monetary damages under the ADA and the RA requires a showing that they intentionally violated the statutes. Intentionality under the RA and the ADA means "deliberate indifference to the strong likelihood [of] a violation." *Viera v. City of New York*, 15 Civ. 5430 (PGG), 2017 WL 3130332, *14 (S.D.N.Y. July 21, 2017) (citation and internal quotations omitted). Defendant wishes to use these disclosures to refute the intentionality element for monetary damages under the ADA and RA. Specifically, Defendant will attempt to prove at trial that the design/build contractor, Cappelli Enterprises ("Cappelli"), Inc., was responsible for the design of the Garage and code compliance, and that they represented to the City that the final design did comply with federal law. (Def. Sanctions Opp. 21.) Defendant will then attempt to prove that because of their attention to the compliance issue, and their belief that the design complied with the ADA and RA, the City was not deliberately indifferent. (*Id.*)

In January of 2018, Plaintiff requested a complete set of the schedules referenced in the Master Garage Agreement provided in the December 18, 2017 disclosure. Defendant complied and produced their second supplemental disclosure on January 31, 2018. (Def. Sanctions Opp. 9; Parker Decl., Ex. 4.)  Defendant notes that the requested schedules were also within the Building Department files which were offered for inspection and copying during discovery. (Def. Sanctions Opp. 9.)

Defendant supplemented their disclosures a third time on February 8, 2018. In that disclosure, Defendant identified Joseph V. Apicella, a former Cappelli employee, as an individual likely to have discoverable information. (Def. Sanctions Opp. 9; Meisels Decl., Ex. 5.) Defendant's fourth, and final, supplemental disclosure came on February 16, 2018. In that disclosure, Defendant identified documents from the Building Department files which it intended to rely upon at trial. (Def. Sanctions Opp. 9.) Those documents included "construction affidavits submitted by contractors/subcontractors to the City Building Department, documents regarding applications for certificates of occupancy, and further correspondence from subcontractors." (*Id*; *See generally* Meisels Decl., Ex. 6.) Defendant again posits that these documents were made available for Plaintiff's review during discovery. (Def. Sanctions Mem. 9.)

### III. DISCUSSION

Defendant seeks the production of Plaintiff's medical records from the Blythedale Children's Hospital. Plaintiff seeks preclusion of the evidence and witness produced in Defendant's supplemental disclosures, and the preclusion of the "affirmative defense" related to the ADA and RA intentionality requirement.  The Court takes each application in turn.

### A.  The Blythedale Children's Hospital Records

Federal Rule of Civil Procedure 26(b)(1) states, in relevant part, that "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."  "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004); *see Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (noting that relevancy "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.").  "While Rule 26(b)(1) provides for broad discovery, courts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses." *Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004).  Further, a plain reading of Rule 26(b)(1) lends the conclusion that "[e]ven where information may be relevant, discovery should not be compelled if the information is privileged or if there is good cause for a protective order." *Id.* at 253 (citing Fed. R. Civ. P. 26(b)(1), 26(c)).

Where, as here, "a federal question case contains pendent state law claims, the federal law of privileges still obtains." *In re Zyprexa Products Liability Litigation*, 254 F.R.D. 50, 52 (E.D.N.Y. 2008); *see Bruno v. CSX Transp., Inc.,* 262 F.R.D. 131, 133–34 (N.D.N.Y. 2009) (noting that a party cannot invoke state privilege law in a federal question case); *National Abortion Federation v. Ashcroft*, No. 03 Civ. 8695(RCC), 2004 WL 555701, at *6 (S.D.N.Y. March 19, 2004) ("In cases arising under federal law such as this one, privileges against disclosure are governed by principles of federal law.").

"Although there is no physician-patient privilege in federal law," Plaintiff does have a privacy interest in her medical records. *Manessis v. New York City Dept. of Transp.*, No. 02 CIV. 359SASDF, 2002 WL 31115032, at *2 (S.D.N.Y. Sept. 24, 2002) (citing *Olszewski v. Bloomberg, L.P.*, No. 96 Civ. 3393, 2000 WL 1843236 at *2 (S.D.N.Y. Dec.13, 2000)), *report and recommendation*; *see Michelman v. Ricoh Americas Corp.*, No. 11–CV–3633 (MKB), 2013 WL 664893, at *3 (E.D.N.Y. Feb. 22, 2013) ("[N]o physician-patient privilege exists under federal common law."). Any right to privacy concerning medical records, however, can be waived when a litigant puts his physical or mental condition at issue in the litigation. *Misas v. North-Shore Long Island Jewish Health System*, 14-cv-8787 (ALC) (DJF), 2016 WL 4082718, at *4 (S.D.N.Y. July 25, 2016). Where a Plaintiff makes a claim of "garden-variety" emotional distress, "'the plaintiff has not put his medical history in issue . . . '" *Id.* (quoting *Brown v. Kelly*, No. 05 Civ. 5442 (SAS), 2007 WL 1138877, at *2 (S.D.N.Y. Apr. 16, 2007)). Although the exact contours of what constitutes garden-variety emotional distress are ambiguous, such claims include those where the "evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or the consequences of the injury. Such claims typically lack extraordinary circumstances and are not supported by any medical corroboration." *Misas*, 2016 WL 4082718, at *4 (quoting *Mugavero v. Arms Acres, Inc.*, 680 F. Supp. 2d 544, 578 (S.D.N.Y. 2010)).

### i. The Blythedale Children's Hospital Records are Not Discoverable

Plaintiff argues that the Blythedale Children's Hospital Records are not relevant to the instant action because she did not receive treatment related to her emotional distress in this action. (Pl. Mem. of Law in Opp. to Def. App. to Compel Disclosure of Medical Records ("Pl. Opp.") 4, ECF No. 71.) Plaintiff further argues that because she only makes claims of garden-

variety emotional distress, Plaintiff has not put her medical condition at issue in this action. (*Id.* at 3.) Defendant argues that the Blythedale Children's Hospital Records are relevant to Plaintiff's damages claims of emotional distress, and that Plaintiff has put her medical condition at issue. (Def. Medical Mot. 2.)

Turning to Rule 26(b)(1)'s relevancy inquiry, the Court cannot ascertain the exact relevancy of the Blythedale Children's Hospital Records at this time. First, the submissions do not indicate the purported contents of the medical records. Second, Plaintiff and Defendant offer contradicting accounts of the medical records. Defendant posits that the records contain information pertaining to Plaintiff's treatment for emotional distress, (Def. Mot. 2), while Plaintiff offers a sworn statement that the subject medical records only contain information pertaining to an unrelated spinal fusion surgery. (Pl. Opp. 3; *see* Decl. of Jennifer Feltenstein ("Feltenstein Aff.") ¶¶ 2–3, ECF No. 72.) Under these circumstances, the most prudent action would be for the parties to submit the Blythedale Children's Hospital Records for *in camera* review to determine the relevancy of the medical records to Plaintiff's claim of emotional distress. *See e.g.*, *Cohen v. Cohen*, No. 09 Civ. 10230(LAP), 2015 WL 4469704, at *2 (S.D.N.Y. June 29, 2015) (noting that "the Court has conducted a second in camera review of 195 documents to determine which, if any, are relevant and discoverable under the Federal Rules of Civil Procedure."); *Asuncion v. Metropolitan Life Ins. Co.*, 493 F. Supp. 2d 716, 723–24 (S.D.N.Y. 2007) (noting that "Before ordering [Defendant] to produce these contracts, however, the Court directed that they be submitted for in camera review, so that the Court could determine whether the contracts actually contained any relevant information.").

Although *in camera* review would be helpful in this circumstance, it is nonetheless unnecessary because Plaintiff has not placed her medical condition at issue in this case.

Courts in this Circuit have held that where "a litigant puts his physical or mental condition into issue in the litigation, [s]he waives [her] right to privacy in any relevant medical records." *Manessis*, 2002 WL 31115032, at *2. The exact manner by which a Plaintiff places their mental condition into issue, however, varies in this Circuit. In some instances, merely alleging an emotional distress claim is sufficient to put a Plaintiff's mental condition at issue. *Id.* In other circumstances, asserting garden variety claims of emotional distress will not necessarily place their mental health condition at issue. *Misas*, 2016 WL 4082718, at *4; *Brown*, 2007 WL 1138877, at *2. Although the exact path Courts must take is vague, this case is more akin those cases in which courts have held that claims of garden variety emotional distress does not place mental conditions at issue. Typically in cases that hold otherwise, "plaintiffs either voluntarily waived [a] privilege, were suing defendants for either the intentional or negligent infliction of emotional distress, or were alleging that defendants' misconduct caused them to seek treatment for an ongoing or permanent mental/emotional condition." *Brown*, 2007 WL 1138877, at *2.[4]

Applying these principles here, Plaintiff's mental condition is not at issue because she only asserts garden variety claims of emotional distress. In the Complaint, Plaintiff stated that she and her family "have been humiliated by being forced to park in the basement of the New Roc Garage." (Compl. ¶ 10.) Further Plaintiff asserted that as a direct and proximate result of the Defendant's alleged unlawful discrimination, she suffered "emotional distress, including but not

---

[4] The Court also echoes the concerns "expressed by earlier courts about allowing intrusive discovery of limited relevance in cases of this type." *Misas*, 2016 WL 4082718, at *4. Defendant's attempt at discovering Plaintiff's medical records runs the risk of discovering highly confidential and sensitive medical information that has little to no relevance to the garden-variety emotional distress claim in this case. *Id.* Discovery of medical records are certainly appropriate when a Plaintiff places their medical condition at issue by asserting emotional distress claims of increased severity. However, in instances where the emotional distress claim is of diminished severity, as is the case here, any interest in the limited relevancy of Plaintiff's medical records cede to interests of privacy and confidentiality. *See id.*

limited to humiliation, embarrassment, stress, and anxiety." (*Id.* ¶ 60.) These allegations can be substantiated by Plaintiff's testimony, through which she can describe her injury in vague or conclusory terms without relating either the severity or the consequences of the injury. These allegations also lack the extraordinary circumstances warranting support by any medical collaboration, and thus, are garden-variety claims of emotional distress. *Misas*, 2016 WL 4082718, at *4. Therefore, because Plaintiff merely asserts garden variety claims of emotional distress, she has not put her mental condition at issue, thus barring disclosure of the subject mental health records. [5]

---

[5] Plaintiff alternatively asserts that the physician-client privilege bars the production of the Blythedale Children's Hospital Records. Federal law, however, does not recognize such a privilege. *Kunstler v. City of New York*, No. 04 CIV 1145 (RWS) (MHD), 2006 WL 2516625, at *1 (S.D.N.Y. Aug. 29, 2006), *aff'd*, 242 F.R.D. 261 (S.D.N.Y. 2007); *see Laurent v. G & G Bus Serv., Inc.*, No. 10 CIV. 4055 JGK LMS, 2011 WL 2683201, at *8 (S.D.N.Y. May 17, 2011), *report and recommendation adopted*, No. 10 CIV. 4055 JGK, 2011 WL 2693651 (S.D.N.Y. July 11, 2011); *Michelman*, 2013 WL 664893, at *3; *see Schomburg v. New York City Police Dept.*, 298 F.R.D. 138, 141 (S.D.N.Y. 2014) )) ("'[I]n cases presenting federal questions, such as here, discoverability, privileges, and confidentiality are governed by federal law, not state law.'" (quoting *Crosby v. City of New York*, 269 F.R.D. 267, 274 (S.D.N.Y. 2010))).

Although a broad physician-patient privilege does not exist under federal law, the Supreme Court of the United States has recognized a psychotherapist-patient privilege under Federal Rule of Evidence 501. *Jaffe v. Redmon*, 518 U.S. 1 (1996). In *Jaffe*, the Supreme Court of the United States explained that federal law should recognize the psychotherapist-patient privilege for three reasons: because (1) "[e]ffective psychotherapy [] depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears."; (2) "[t]he psychotherapist privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem"; and (3) because "a psychotherapist privilege was among the nine specific privileges recommended by the Advisory Committee in its proposed privilege rules." *Id.* at 10–15. In recognizing the psychotherapist-patient privilege, the Supreme Court explicitly contrasted psychotherapy from treatment by a physician for physical ailments, noting that a deep-rooted need for confidence and trust was absent because treatment by a physician "can often proceed successfully on the basis of a physical examination, objective information supplied by the patient, and the results of diagnostic tests." *Id.* at 10. Neither the Supreme Court of the United States nor the Second Circuit have recognized a general physician-patient privilege since *Jaffe*. Therefore, Plaintiff may not invoke such a privilege to bar production of the Blythedale Children's Hospital Records.

## B. Motion for Sanctions

Federal Rule of Civil Procedure 26(a) requires, *inter alia,* that a party must provide "a copy—or a description by category and location—of all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii). Further, a party must provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). A party who makes a disclosure under Rule 26 must supplement or correct the disclosure or response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or as ordered by the court." Fed. R. Civ. P. 26(e)(1)(A)–(B).

Under Rule 37(c)(1), a court may sanction a party that fails to comply with their Rule 26(a) obligations. The range of sanctions available to a court pursuant to Rule 37 "includes—but is not limited to—orders deeming certain facts established; permitting an adverse inference instruction; striking pleadings; prohibiting the 'disobedient' party from making specific claims or introducing certain matters into evidence; dismissing a claim or the entire action or granting default judgment against the disobedient party; or entering an order of contempt." *Doug's Word Clocks.com Pty Ltd. v. Princess Int'l Inc.*, 323 F.R.D. 167, 172 (S.D.N.Y. 2017) (citation and internal quotation marks omitted). "Pursuant to Rule 37(c)(1), preclusion of evidence . . . not identified in initial disclosures under Rule 26(a)(1)(A)(iii) or supplemental disclosures under Rule 26(e)(1)(A) or another listed sanction is automatic unless the non-disclosure was

substantially justified or harmless." *Vaccaro v. Waterfront Homes Marina*, No. 10 Civ. 4288(NRB), 2011 WL 5980997, at \*5 (S.D.N.Y. Nov. 30, 2011) (citing *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297–98 (2d Cir. 2006)). Substantial justification is a "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Preuss v. Kolmar Laboratories, Inc.*, 970 F. Supp. 2d 171, 175 (S.D.N.Y. 2013) (citation and internal quotations omitted). A violation of the Federal Rule's disclosure obligations is harmless within the meaning of Rule 37(c) "when there is no prejudice to the party entitled to the disclosure." *Id.*

The fundamental purpose of Rule 37(c) is to prevent the practice of "sandbagging" an adversary with new evidence. *Haas v. Delaware and Hudson Ry. Co.*, 282 F. App'x. 84, 86 (2d Cir. 2008) (summ. order); *Underpinning & Foundation Skanska, Inc. v. Travelers Cas. & Sur. Co. of America*, 726 F. Supp. 2d 339, 348 (S.D.N.Y. 2010). Nevertheless, imposition of sanctions is within the district court's discretion, and preclusion of evidence pursuant to Rule 37(c)(1) remains "'a drastic remedy and should be exercised with discretion and caution.'" *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 279 F.R.D. 131, 134 (S.D.N.Y. 2011) (quoting *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 606 (S.D.N.Y. 2004)). "[B]efore the extreme sanction of preclusion [] may be used by the district court, a judge should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." *Ocello v. White Marine, Inc.*, 347 F. App'x 639, 641 (2d Cir. 2009) (summ. order) (quoting *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988)).

Where a party seeks sanctions for discovery-related abuses pursuant to Rule 37, the "moving party bears the burden of showing that its adversary failed [to] timely [] disclose information required by Rule 26." *Doug's Word*, 323 F.R.D. at 172 (S.D.N.Y. 2017) (citation

and internal quotations omitted). "To satisfy this burden, the moving party must demonstrate: (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had a culpable state of mind; and (3) that the missing evidence is relevant to the party's claim or defense such that a reasonable trier of fact could find it would support that claim or defense." *Id.* (internal quotation marks omitted); *See Williams v. Bethel Springvale Nurson Home, Inc.*, No. 14-CV-09383 (NSR), 2018 WL 1662644, at *3 (S.D.N.Y. Apr. 5, 2018); *Lodge v. United Homes, LLC*, 787 F. Supp. 2d 247, 258 (E.D.N.Y. 2011).

Moreover, when a party seeks to preclude evidence or a witness' testimony on the grounds that the witness or evidence was not previously identified in violation of Rule 26, the courts consider the following factors: (1) the party's explanation for its failure to comply with the disclosure requirement; (2) the importance of the evidence or testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to meet the new evidence and testimony; and (4) the possibility of a continuance. *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006); *see United States v. City of New Yor*k, No. 07–cv–2067 (NGG)(RLM), 2010 WL 2838386, at *3 (E.D.N.Y. July 19, 2010).

Here, Plaintiff satisfied her burden for sanctions pursuant to Rule 37. First, Defendant had an obligation to timely produce the discovery in question, namely, three document productions and one new witness. (*See* Pl. Mem. of Law in Supp. of Mot. for Discovery Abuse Sanctions and Fees ("Pl. Sanctions Mot.") 1, ECF No. 83; Def. Sanctions Opp. 8–9.) Defendant was obligated to disclose the disputed material pursuant to Rule 26(a) and Rule 26(e) in a timely manner because the disclosures consisted of people and documents that the Defendant may use to support its claims or defenses. Fed. R. Civ. P. 26(a)(1)(A)(i)–(ii).  Moreover, Defendant

acknowledged their continued duty when in their response to Plaintiff's discovery request the City pledged to supplement their disclosure upon further investigation. (Pl. Sanctions Mot. 3–4.) Rule 26, of course, required the production of the supplemental disclosures in a timely manner. Fed. R. Civ. P. 25(e)(1)(A).

The eventual disclosures in this case were untimely. The parties originally communicated that discovery was complete to Magistrate Judge Paul E. Davison on September 15, 2015. (*See* ECF Docket Entry of September 15, 2015.) The parties reiterated to this court on a second occasion that discovery was complete on December 19, 2017.[6] Yet, Defendant made supplemental disclosures on December 18, 2017, January 31, 2018, February 8, 2018, and February 16, 2018—dates well outside of the close of discovery.[7] Certainly, making "a supplemental disclosure [over] a year after the close of fact discovery is not 'timely,' by any definition." *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 161 (S.D.N.Y. 2012).

Second, Defendant had the requisite "culpable state of mind." *Williams*, 2018 WL 1662644, at * 3. A Defendant possesses a culpable state of mind when Defendant breaches a discovery obligation through bad faith, gross or ordinary negligence. *Markey v. Lapolla Industries, Inc.*, No. CV 12–4622(JS)(AKT), 2015 WL 5027522, at *17 (E.D.N.Y. Aug. 25, 2015); *McIntosh v. United States*, No. 14-CV-7889 (KMK), 2016 WL 1274585, at *35 n.38 (S.D.N.Y. March 31, 2016); *See In re September 11th Liability Insurance Coverage Cases*, 243 F.R.D. 114, 125 (S.D.N.Y. 2007).

---

[6] During the time between September 15, 2015 and December 19, 2017, Defendant filed a motion for summary judgment, which this Court decided on May 30, 2017. *Feltenstein v. City of New Rochelle*, 254 F. Supp. 3d 647 (S.D.N.Y. 2017).

[7] It bears noting that at the time of the conference, Plaintiff had not yet received the December 18, 2018, disclosure. (Pl. Sanctions Mot. 2.)

Here, the Court is unconvinced by Defendant's excuses. The City first argues that their untimely disclosures were due to inadvertent oversight. (Def. Sanctions Opp. 14.) The City also posits that because the documents in the three disclosure productions were available for Plaintiff's review during discovery, Plaintiff could have found them, or similar documents, through their own due diligence. (*Id.* 13–14.) Defendant likewise argues that Plaintiff could have uncovered the Mr. Apicella's identity through their own due diligence. (*See id.*)

It is Defendant's duty and responsibility to disclose "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses."  Fed. R. Civ. P. 26(a)(1)(A)(ii). Likewise, it is Defendant's duty to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." its claims or defenses" Fed. R. Civ. P. 26(a)(1)(A)(i); *See Williams*, 2018 WL 1662644, at *5 ("Defendant's mere 'knowledge of the existence of a witness does not satisfy the Rule 26(a)(1)(A) disclosure obligation; that obligation is fulfilled only if [Defendant] informed [Plaintiff] that [they] might call the witness in support of its claims or defenses.'" (quoting *Downey v. Adloox Inc.*, 16-CV-1689 (JMF), 2018 WL 794592, at *1 (S.D.N.Y. Apr. 5, 2018))). Here, Defendant's reasons for failing to adhere to these responsibilities is inexcusable.  Therefore, Defendant's late disclosure was, at a minimum, grossly negligent. *See Lodge*, 787 F. Supp. 2d at 261.

Finally, the Court finds that the untimely disclosed evidence is relevant to the City's defense "such that a reasonable trier of fact could find it would support that claim or defense." *Doug's Word*, 323 F.R.D. at 172. Indeed, the fact that Defendant produced the evidence in a

supplemental disclosure indicates its relevancy. Further, Defendant explicitly noted that the evidence in the supplemental disclosures is extremely relevant to their defense. (Def. Sanctions. Opp. 18.) Thus, Plaintiff satisfied the burden for sanctions under Rule 37.

The Court next finds that Defendant's late disclosure of evidence and a potential witness was not substantially justified or harmless. Fact discovery ended in 2015. Defendant submitted their supplemental disclosure well outside of that date, beginning in December of 2017. Under these circumstances, no "parties could differ as to whether the party was required to comply" with their disclosure obligations. *See Presuss*, 970 F. Supp. 2d at 175 (citation and internal quotations omitted). Further, Defendant's failure to comply with their disclosure obligations was not harmless. Plaintiff was prejudiced by their inability to depose the newly announced witness as well as depose potential witnesses with respect to the newly disclosed documents.

Next, the Court finds that preclusion of the evidence and newly identified witness in inappropriate in this case. When, as here, a party seeks to preclude evidence or a witness' testimony on the grounds that they were not previously identified in violation of Rule 26, courts consider the following factors: (1) the party's explanation for its failure to comply; (2) the importance of the testimony of the precluded witness or evidence; (3) the prejudice suffered by the opposing party as a result of having to meet the new testimony; and (4) the possibility of a continuance. *Patterson*, 440 F.3d at 117.

The first two factors weigh in favor of preclusion. As previously discussed, Defendant's excuse for their untimely supplemental disclosures, although seemingly benign, is unconvincing. Moreover, Plaintiff suffered prejudice because she was unable to depose the new potential witness or depose potential witnesses based on the newly disclosed documents.

The importance of the disclosed evidence and witness, however, weighs against preclusion. As Defendant notes, they seek to use the newly disclosed evidence and witness to rebut the allegation that the City was deliberately indifferent under the ADA and RA. This defense is at the heart of their trial strategy, and thus, the untimely disclosed evidence and witness are relevant to the defense. *See New World Solutions, Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 311 (S.D.N.Y. 2015) (finding that this factor weighed against preclusion where evidence would have been relevant to establishing a claim).

The final factor likewise weighs against preclusion. Here, this Court postponed trial pending resolution of the two instant motions. Accordingly, no trial date is set, and the possibility of a continuance is very much a reality. Although the Court "strongly disfavors extensions of deadlines generally as inexpedient and wasting resources", *523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600, 638 (S.D.N.Y. 2014), under these circumstances, this factor weighs against preclusion. Postponing trial for a limited time "would not necessitate a continuance since no trial date has been set and Defendants have ample time to investigate the witness." *Jacob v. Bon Secours Charity Health System, Inc.*, No. 02 Civ. 1398(BSJ)(RLE), 2008 WL 2216275, at *2 (S.D.N.Y. May 28, 2008); *see Ritchie Risk-Linked Strategies*, 280 F.R.D. at 162 ("With no trial date yet set, this Court sees no reason why a continuance would not be feasible here.") Therefore, preclusion is not warranted in this case because two of the four factors weigh against such relief.

Nonetheless, a lesser sanction is warranted to correct prejudice to Plaintiff. *See Port Authority Police Benevolent Association, Inc. v. Port Authority of New York and New Jersey*, 15-CV-3526 (KMW) (SDA), 2018 WL 485980, at *2 (S.D.N.Y. Jan. 19, 2018). Where, as here, Plaintiff suffered prejudice in her inability to depose a new witness or depose potential witnesses

based on the newly disclosed documents, any prejudice to Plaintiff may be "ameliorated by the opportunity to depose [] witnesses prior to trial." *L-3 Communications Corp. v. OSI Systems, Inc.*, No. 02 Civ. 9144(PAC), 2006 WL 988143, at *11 (S.D.N.Y. Apr. 13, 2006). Therefore, discovery in this case is hereby re-opened to allow Plaintiff to take the deposition of Mr. Apicella and any supplemental depositions on the issue of deliberate indifference or any topics related to the newly disclosed evidence. All depositions must be completed by October 28, 2018. Defendants must make their witnesses available for deposition, and must make the transcript of the depositions available to Plaintiff, prior to the October 28, 2018 deadline. The parties are further directed to attend a pre-trial conference on Friday, November 16, 2018 at 12:00 p.m. A final trial date will be set at that conference, with trial to follow soon thereafter.

### i.        Attorney's Fees

Plaintiff's application for attorney's fees under Rule 37(c)(1)(A) is granted in part, and denied in part. If Plaintiff wishes to supplement the deposition of the only deposed Defense witness—Deputy Commissioner Paul Vacca— Defendant shall bear the cost. *See Complaint of Kreta Shipping, S.A.*, 181 F.R.D. 273, 278 (S.D.N.Y. 1998) (granting application for attorney's fees with respect to depositions that needed to be taken as a direct result of the non-movant's discovery violation, but not those depositions that would have taken place had the non-movant comported with their discovery obligations).

The remainder of the application for attorney fees, however, is denied. First, the motion before the Court was a relatively simple one. *See Giudice v. Harlan*, 15 Civ. 7330 (LTS) (JCF), 2017 WL 564085, at *4 (S.D.N.Y. Feb. 10, 2017) (denying application for attorney's fees, in part, because the burden of drafting and reviewing the motion "has been limited to the work performed on a relatively straightforward motion."). Second, had Defendant complied with their

Rule 26(a) obligations, the deposition of the newly discovered witness would have likely taken place during discovery. *See Complaint of Kreta Shipping, S.A.*, 181 F.R.D. at 278 (denying application for attorney's fees with respect to "the preparation for and conduct of the depositions that would have been expended even if [the non-movant] had meet their [discovery] obligations."). Further, the severity of Defendant's violation does not amount to the "duplicitous behavior" or "unjustified" actions typically warranting the imposition of attorney's fees. *See Advanced Analytics, Inc. v. Citigroup Global Markets, Inc.*, 301 F.R.D. 31, 44 (S.D.N.Y. 2014), *objections overruled*, 301 F.R.D. 47 (S.D.N.Y. 2014). Therefore, the Court exercises its discretion and denies Plaintiff's application for attorney's fees.[8] *See Rojo v. Deutsche Bank*, No. 06 Civ. 13574(HB), 2009 WL 3790191, at *6 (S.D.N.Y. Oct. 30, 2009).

### C. Preclusion of Affirmative Defense

The Court denies Plaintiff's motion to preclude the City's ADA and RA monetary damages defense theory. Plaintiff alleges that Defendant is attempting to raise, for the first time, the "affirmative defense" that the City relied upon its hired contractor, Cappelli Enterprises ("Cappelli"), Inc., for the design, construction, and code compliance of the Garage, therefore

---

[8] Plaintiff also moves for the imposition of sanctions pursuant to Rule 26(g). Rule 26(g) states, in relevant part, that "[e]very disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name." Fed. R. Civ. P. Rule 26(g)(1). "By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" in the disclosures is complete and correct as of the time it is made. Fed R. Civ. P. 26(g)(1)(A). Plaintiff asserts that Defendant violated this obligation because their discovery responses were not complete or correct at the time they were made. (Pl. Sanctions Mot. 19.) Defendant, however, did not violate this rule. Defendant comported with Plaintiff's discovery request and noted that the disclosures were complete and correct at the time, and that they would supplement their disclosures at a later time following further investigation. The fact that Defendant supplemented their disclosures in an untimely fashion is of no import to the Rule 26(g)(1)(A) inquiry because there is no indication that Defendant's did not believe, after a reasonable inquiry, that their initial Rule 26(a) disclosures were complete and correct at that time.

exculpating the City from liability for monetary damages under the ADA and the RA. (Pl. Sanctions Mot. 16.) Defendant alleges that their defense of having relied on Cappelli for the design, construction, and code compliance of the New Roc Garage is not an affirmative defense, but rather, a theory that rebuts an essential element of Plaintiff's ADA and RA claim—namely that they acted with deliberate indifference to the strong likelihood of violating the statutes. (Def. Sanctions Opp. 20–21.)

Federal Rule of Civil Procedure 8(c) states that when responding to a pleading, "a party must affirmatively state any avoidance or affirmative defense." "An affirmative defense is defined as [a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true." *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Company, LLC*, 15 Civ. 8459 (LGS), 2018 WL 3364388, at *9 (S.D.N.Y. July 9, 2018) (citation and internal quotations omitted). A theory that merely denies an element of an offense is not an affirmative defense. *See id.*

Here, Defendant attempts to refute the intentionality prong of a claim for monetary damages under the ADA and RA by showing that they did not act with deliberate indifference, as required by statute. Defendant wishes to prove at trial that they did not possess the requisite intent subjecting them to monetary liability under the ADA and RA. (Def. Sanctions Opp. 21.) Such a defense cannot be categorized as an affirmative defense because, assuming that all the allegations in the complaint were true, the defense would not defeat Plaintiff's claim. *See Licensing Corp.*, 2018 WL 3364388, at *9. If all the allegations in the Complaint are taken as true, Defendant would have acted with the requisite intentionality. This defense, however, simply refutes that essential element for monetary damages under the ADA and the RA.

## CONCLUSION

For the foregoing reasons, Defendant's motion to compel disclosure of Plaintiff's medical records is DENIED. Plaintiff's motion for discovery sanctions is DENIED in part and GRANTED in part.

Discovery in this case is re-opened to allow Plaintiff to take the deposition of Mr. Apicella and the supplemental deposition of Mr. Vacca related to the newly disclosed evidence. If Plaintiff so chooses to supplement the deposition of Mr. Vacca, Defendant shall bear the cost. All depositions must be completed by October 28, 2018. The parties are further directed to attend a pre-trial conference on Friday, November 16, 2018 at 12:00 p.m. at the United States Courthouse, 300 Quarropas Street, Courtroom 218, White Plains, New York 10601. A final trial date will be set at that conference, with trial to follow soon thereafter.

The Court respectfully directs the Clerk of Court to terminate the motion at ECF No. 83.

Dated:   August 8, 2017                SO ORDERED:
         White Plains, New York

NELSON S. ROMÁN
United States District Judge